Case 3:20-cv-00240   Document 46   Filed on 12/21/21 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
December 21, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILLSAP WATERPROOFING, INC., | § § § § | |
| Plaintiff. | | |
| VS. | § § § § § § § § | CIVIL ACTION NO. 3:20-cv-00240 |
| UNITED STATES FIRE INSURANCE COMPANY, ET AL., | | |
| Defendants. | | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me is Defendant United States Fire Insurance Company's Motion for Judgment on the Pleadings. Dkt. 40. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED** in part and **DENIED** in part.

## **FACTUAL BACKGROUND**

In 2011, Maravilla Owners Association, Inc. ("Maravilla") hired a number of contractors, including Millsap Waterproofing, Inc. ("Millsap"), to repair certain units and buildings at a multi-family condominium complex located in Galveston, Texas. Unhappy with the repair work, Maravilla filed a state court lawsuit in 2016 against various contractors, including Millsap, alleging that their shoddy work damaged the condominium complex. More than 80 condominium owners intervened in the lawsuit.

In March 2019, Millsap settled the claims brought against it in state court. Millsap then turned to its insurance carriers and asked them to pay the settlement amounts or provide reimbursement for the settlement payments. Amerisure Insurance Company ("Amerisure") issued a primary policy, with limits of $1 million per each occurrence, subject to a $2 million aggregate limit. United States Fire Insurance Company ("U.S. Fire") issued a commercial umbrella policy (the

"U.S. Fire Policy") with limits of $11 million per occurrence (which was later reduced to $5 million per occurrence) in excess of the Amerisure policy. Amerisure paid $1 million on behalf of Millsap towards the settlement but refused to pay or reimburse Millsap any further amounts. U.S. Fire refused to pay or reimburse Millsap for any of Millsap's payments towards the settlement.

On July 14, 2020, Millsap filed this lawsuit against Amerisure and U.S. Fire, bringing causes of action against both defendants for breach of contract, breach of the common-law duty of good faith and fair dealing, and violations of § 541.060 and Chapters 542 of the Texas Insurance Code. U.S. Fire has filed a motion to dismiss the extra-contractual claims under Federal Rule of Civil Procedure 12(c).

## LEGAL STANDARD

Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The standard for resolving a Rule 12(c) motion is the same as a motion to dismiss under Rule 12(b)(6). *See Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 873 (5th Cir. 2021).

When reviewing a Rule 12(b)(6) motion to dismiss, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000). To survive a motion to dismiss, the pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings also must contain enough facts to state a claim that is "plausible on its face." *Id.* at 570. A claim is facially plausible when it asserts facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## EVIDENTIARY OBJECTION

Millsap attaches to its brief in opposition to the Motion for Judgment on the Pleadings an April 13, 2020 letter from U.S. Fire's counsel to Millsap's counsel

responding to Millsap's pre-suit settlement demand. U.S. Fire objects to this letter on the ground that Millsap is trying to present a matter outside the pleadings. The law is clear: when considering a Rule 12(c) motion, district courts "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quotation omitted). Because the letter does not fall within any of these permitted categories, U.S. Fire's objection is sustained. I will disregard the letter.

## ANALYSIS

### A.   BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

In the Original Complaint, Millsap asserts that U.S. Fire breached its common-law duty of good faith and fair dealing by denying the payment of benefits owed under the U.S. Fire Policy. In its Motion for Judgment on the Pleadings, U.S. Fire argues that the claim should be dismissed because an insurer owes no common-law duty of good faith and fair dealing to its insured for third-party liability claims. Millsap responds that U.S. Fire's argument misses the mark because Millsap is presenting first-party claims against U.S. Fire.

The Texas Supreme Court has distinguished first-party claims from third-party claims "on the basis of the claimant's relationship to the loss." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007). "[A] first-party claim is stated when 'an insured seeks recovery for the insured's own loss,' whereas a third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" *Id.* (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997)).

Here, Millsap seeks reimbursement for the settlement amounts it paid to resolve the state court lawsuit. The ultimate question I must determine is whether that is a first-party claim or a third-party claim. If it is a first-party claim, then Millsap's good faith and fair dealing cause of action survives the motion to dismiss.

3

If, on the other hand, it is a third-party claim, then Millsap's good faith and fair dealing cause of action must be dismissed.

Fortunately, I do not need to look very far to determine whether Millsap's claims for reimbursement of its settlement payments is a first- or third-party claim. The Texas Supreme Court has expressly held that "[a] loss incurred in satisfaction of a settlement belongs to the third party and is not suffered directly by the insured," and is, accordingly, not a first-party claim. *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 674–75 (Tex. 2008). *See also Lamar Homes*, 242 S.W.3d at 17 (explaining that, while a claim for defense costs is a first-party claim, a claim for indemnification does not belong to the insured and, therefore, is not a first-party claim). Because Millsap's claim is clearly a third-party liability claim under Texas law, there is no recognized duty of good faith and fair dealing. This cause of action must be dismissed.

**B. TEXAS INSURANCE CODE § 541.060**

Millsap brings claims under three separate provisions of § 541.060. I will address each provision individually.

### 1. § 541.060(a)(1)

Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." TEX. INS. CODE § 541.060(a)(1). U.S. Fire argues that this claim must be dismissed because a § 541.060(a)(1) misrepresentation claim "must be about the details of a policy, not the facts giving rise to a claim for coverage." Dkt. 40 at 5 (quoting *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014)). Apparently recognizing the strength of U.S. Fire's position, Millsap agrees to withdraw its claim that U.S. Fire is liable under § 541.060(a)(1). Accordingly, I recommend that U.S. Fire's motion to dismiss the § 541.060(a)(1) claim be granted.

### 2. § 541.060(a)(2)

Section 541.060(a)(2) prohibits an insurer from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." TEX. INS. CODE § 541.060(a)(2)(A). Although § 541.060(a)(2) imposes liability for not attempting in good faith to effectuate a prompt, fair, and equitable settlement when liability is reasonably clear, this statutory provision has been interpreted by the Texas Supreme Court as the statutory equivalent to the common-law *Stowers* cause of action. *See Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262–64 (Tex. 2002) (interpreting a previous version of § 541.060(a)(2)). "A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 395 (Tex. 2016). A plaintiff bringing a claim under § 541.060(a)(2) must, therefore, meet the requirements of a *Stowers* claim. *See Ryan Law Firm, LLP v. N.Y. Marine & Gen. Ins. Co.*, No. 1:19-CV-629-RP, 2020 WL 5820531, at *6 (W.D. Tex. Sept. 30, 2020) ("[T]hird party claims under Chapter 541 and the common law *Stowers* doctrine are governed by the same standard of liability." (quotation omitted)).

Accordingly, "[t]he good-faith duty under Section 541.060 is triggered only where '(1) the policy covers the claim, (2) the insured's liability is reasonably clear, (3) the claimant has made a proper settlement demand within policy limits, and (4) the demand's terms are such that an ordinarily prudent insurer would accept it,'" considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Pride Transp. v. Cont'l Cas. Co.*, 511 F. App'x 347, 354 (5th Cir. 2013) (quoting *Rocor*, 77 S.W.3d at 255). Earlier this year, the Texas Supreme Court "decline[d] to extend *Stowers* to cases in which there is no liability in excess of policy limits." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021).

Based on the allegations in the Original Complaint, Millsap had between $12 and $13 million of insurance coverage for the claims at issue in the state court lawsuit. Because Millsap acknowledges that it settled the state court lawsuit for less than that amount, U.S. Fire argues that Millsap has not pled, and cannot plead, that its liability was in excess of the combined policy limits of the Amerisure and U.S. Fire insurance policies. As a result, U.S. Fire avers that dismissal of the § 541.060(a)(2) claim is required. Millsap does not directly respond to this argument.

Instead, in an effort to avoid dismissal, Millsap contends that U.S Fire "denied coverage without conducting a reasonable investigation, and then claimed Millsap would not be covered under any circumstance if Millsap settled on its own. Chapter 541 protects insureds such as Millsap from getting whipsawed by such outrageous behavior." Dkt. 42 at 7. Stated simply, Millsap is claiming that U.S. Fire's conduct before the settlement agreement was executed and before Amerisure made its $1 million payment is actionable under § 541.060(a)(2)(A) for unfair settlement practices. The problem with this argument is that the U.S. Fire Policy is an umbrella policy. It is well-established under Texas law that an umbrella, or excess, insurance policy is triggered only when the primary insurance policy is exhausted. *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 209 (5th Cir. 1996) ("Texas law dictates that primary policies' limits must be exhausted before excess insurers become liable"). Even if I assume that Amerisure owed only $1 million in coverage, the Amerisure policy was not exhausted until the settlement agreement was signed and Amerisure paid the $1 million as part of the settlement. U.S. Fire cannot be held liable under § 541.060(a)(2) for its pre-settlement conduct. Because the § 541.060(a)(2) claim attacks U.S. Fire's pre-settlement conduct, the claim should be dismissed.

### 3. § 541.060(a)(7)

Section 541.060(a)(7) prohibits an insurer from "refusing to pay a claim without conducting a reasonable investigation." TEX. INS. CODE § 541.060(a)(7).

6

U.S. Fire contends this claim must be dismissed because Millsap has failed to explain "how the specific statutory violation caused the loss of coverage." Dkt. 40 at 9. In response, Millsap argues that its Original Complaint specifically alleges that U.S. Fire failed to investigate: (1) whether "property damage" began within the U.S. Fire Policy period; and (2) the allocation of Millsap's settlement payments between covered and uncovered claims. *See* Dkt. 1 at 12–13.

As noted above, a primary insurance policy must be exhausted before an umbrella policy is triggered. This means that U.S. Fire had no obligation to investigate the claim until the limits of the underlying Amerisure policy were exhausted. If it is eventually determined that Amerisure's policy provided a total of $1 million in coverage, U.S. Fire's obligation to investigate began when Amerisure made its $1 million payment. If the Court holds that Amerisure's policy provided a total of $2 million in coverage, U.S. Fire's duty to investigate will not kick in until Amerisure pays that amount. Either way, I think it is premature to dismiss the § 541.060(a)(7) claim at the motion to dismiss stage. We should allow the case to proceed and can revisit this claim on summary judgment.

C.   **CHAPTER 542 PROMPT-PAYMENT CLAIM**

Chapter 542 of the Texas Insurance Code, commonly referred to as the Prompt-Payment Statute, "requires the prompt payment or resolution of [insurance] claims according to a defined timetable." *DeLeon v. Lloyd's London*, 259 F.3d 344, 354 (5th Cir. 2001) (discussing previous codification of the statute). "Claim" is defined by the statute as "a first-party claim . . . made by an insured or policyholder under an insurance policy or contract [that] must be paid by the insurer directly to the insured or beneficiary." TEX. INS. CODE § 542.051(2). A cause of action under Chapter 542 is not available for third-party claims. *See Evanston*, 256 S.W.3d at 674–75 (explaining that the Texas Legislature intended for prompt-payment damages to apply only to first-party claims).

Millsap contends that U.S. Fire violated Chapter 542 by failing to promptly "reimburse Millsap for Millsap's payment of settlements." Dkt. 1 at 18. As far as

7

damages are concerned, Millsap seeks to recover, in addition to the amount it paid to settle the state court case, 18 percent interest and reasonable attorneys' fees, as provided by Chapter 542. *See* TEX. INS. CODE § 542.060(a).

Relying on the Texas Supreme Court's decision in *Evanston*, U.S. Fire argues that Millsap's claim for reimbursement of settlement costs is a third-party claim for which Chapter 542 does not apply. I wholeheartedly agree. As already noted, the Texas Supreme Court expressly held in *Evanston* that "[a] loss incurred in satisfaction of a settlement belongs to the third party and is not suffered directly by the insured." 256 S.W.3d at 674–75. Because Chapter 542 "does not apply to claims for reimbursement of settlement costs in the context of a liability insurer's denial of indemnity for a third-party claim against its insured," the Chapter 542 claim must be dismissed. *Id.* at 674.

Millsap asserts that *Evanston* is inapplicable because its claim against U.S. Fire is for reimbursement per the terms of the U.S. Fire Policy, making it a first-party claim. But Millsap fails to cite any policy language which indicates that it is entitled to reimbursement of amounts it paid to settle the state court case. The contractual language quoted in the Original Complaint merely indicates that U.S. Fire has an obligation to pay certain amounts "on behalf of" Millsap. Dkt. 1 at 4. There is no policy language that requires U.S. Fire to indemnify Millsap for the settlement payments at issue here.

D.  **MILLSAP'S REQUEST TO AMEND THE COMPLAINT**

At the end of its response to the Motion for Judgment on the Pleadings, Millsap requests an opportunity to amend its Complaint in the event that I determine any claims should be dismissed. In making this request, Millsap forgets to mention that I issued a docket control order more than a year ago which established a November 6, 2020 deadline for the parties to amend their pleadings. That docket control order means something. "Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591

8

F.3d 458, 470 (5th Cir. 2009) (quoting FED R. CIV. P. 16(b)(4)). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted). Because Millsap has failed to show good cause to amend, its request is denied.

## CONCLUSION

For the reasons identified above, I recommend that U.S. Fire's Motion for Judgment on the Pleadings be **GRANTED** in part and **DENIED** in part. Millsap's claims for breach of the common-law duty of good faith and fair dealing, violations of § 541.060(a)(1) and (a)(2), and violations of Chapter 542's prompt-payment requirements should be dismissed. Millsap's claim for violation of § 541.060(a)(7) should survive the pleading stage.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 21st day of December 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE