UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MILLSAP WATERPROOFING, INC. | § § | |
| PLAINTIFF | § § | |
| V. | § § | CIVIL ACTION NO. 3:20-CV-240 |
| UNITED STATES FIRE INSURANCE COMPANY, AND AMERISURE INSURANCE COMPANY, | § § § § § | |
| DEFENDANTS | § | |

**REPLY IN SUPPORT OF AMERISURE INSURANCE COMPANY'S OBJECTIONS TO MEMORANDUM AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE ANDREW M. EDISON**

NOW COMES Defendant Amerisure Insurance Company ("Amerisure"), pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), and files its Reply to Plaintiff Millsap Waterproofing, Inc.'s ("Millsap's") and United States Fire Insurance Company's ("US Fire's") Responses (Doc Nos. 58 & 59 respectively) in Support of Judge Andrew M. Edison's Memorandum and Recommendation ("M&R") (Doc. 55).

### I.     INTRODUCTION

Judge Andrew M. Edison's Memorandum and Recommendation ("M&R") (Doc. 55) relies heavily on the southern district's decision in *Urban Oaks Builders LLC v. Gemini Insurance Co.*, No. 4:19-CV-4211, 2021 WL 7209213 (S.D. Tex. Dec. 14, 2021), *report and recommendation adopted*, No. 4:19-CV-04211, 2022 WL 605575 (S.D. Tex. Feb. 28, 2022). Like *Urban Oaks*, the M&R comes to the conclusion there are

multiple "occurrences" without determining definitely how an "occurrence" is defined. The M&R uses the "phases" but, as previously discussed, there are not clear "phases" of the Project.[1]

But as the case involves Amerisure or U.S. Fire's duty to indemnify Millsap for amounts paid in the Underlying Lawsuit, Millsap has the burden under Texas law to allocate the amounts actually paid to each "occurrence." As the M&R fails to determine how the different "occurrences" are delineated, allocation would be impossible and the Court should not adopt the recommendations.

Additionally, Amerisure maintains that Millsap's continuous and uninterrupted waterproofing work on the Project only involved one "occurrence" under the long-standing Texas law. To use the *effect* of Millsap's waterproofing on the 80 intervenors as a benchmark for the number of "occurrences" is in direct contradiction to the holding in *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co*. ("Maurice Pincoffs"), 447 F.2d 204 (5th Cir. 1971) (emphasis added). Moreover, contrary to U.S. Fire's contention, Amerisure's policy does clearly delineate that continued exposure to a single harmful condition is intended to be a single "occurrence" under the Policy. Consistent with the holding in *Evanston Ins. Co. v. Mid-Continent Casualty Co*., the evidence on record shows Millsap's continued and uninterrupted work, through change orders and payment

---

[1] The "Project" is, according to the contract and supporting documents, Millsap's waterproofing work on Buildings E, F, & G of the Maravilla Condominiums ("the Project") after these condominiums was damaged by Hurricane Ike. *See* Doc. 19, Ex. C.

**REPLY IN SUPPORT OF AMERISURE INSURANCE COMPANY'S
OBJECTIONS TO MEMORANDUM AND RECOMMENDATIONS** **PAGE 2**

draws, on all three buildings. 909 F.3d 143, 149 (5th Cir. 2018). As such, there was a single occurrence and the Court should not adopt the recommendations.

## II.     ARGUMENTS AND AUTHORITIES

**A. *Urban Oaks* is Not Analogous Resulting in a More Broad and Unworkable Decision**

Both Millsap and United Fire point to *Urban Oaks* to support the position that the M&R is well-reasoned and consistent with Texas law. Doc 58, p. 7, Doc. 59, p. 7 (both citing *Urban Oaks*, 2021 WL 7209213). The recommendations of the magistrate judge in *Urban Oaks* were published in December 2021 and adopted in February 2022, well after briefing on the motions for summary judgment in this matter were completed, so the recent decision is not addressed in the original briefing. While *Urban Oaks* involves the determination as to the number of occurrences for a large construction project, several distinguishing factors make the present M&R a much larger departure from settled law.

      1.      <u>Unlike *Urban Oaks*, if there are multiple "occurrences," then Millsap has the duty to allocate between what was paid to each "occurrences"</u>

Perhaps the most key difference between this case and *Urban Oaks* is that the *Urban Oaks* case only addressed whether the primary carrier had a continued duty to defend. Therefore, as the court in *Urban Oaks* articulated, the only question was whether there was a single "occurrence" or multiple "occurrences" because the answer to that question was all that was required to determine if the primary carrier's defense obligation was complete or continuing. *Urban Oaks*, 2021 WL 7209213, at *3 ("In order to determine when or if Gemini's duty to defend Plaintiffs ceased, the Court must first

determine whether UOB's claims under the Gemini Policy are the result of a single occurrence or multiple occurrences."). [2]

Here, in contrast, Millsap seeks to determine which carrier has a duty to *indemnify* it for amounts paid. *See* Doc. 1, Doc. 19. In Texas, the insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage. *Nat'l Union Fire Ins. Co. of Pitt. v. Puget Plastics Corp.,* 532 F.3d 398, 401 (5th Cir.2008). Millsap, as the insured, has a duty to allocate its damages. *Satterfield & Pontikes Constr., Inc. v. United States Fire Ins. Co.*, 898 F.3d 574, 583 (5th Cir. 2018); *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 862 (5th Cir. 2010)("International (the carrier) should not be penalized for the fact that no allocations were made. Nor should RSR (the insured) be rewarded for failing to **track each of its liabilities diligently** through to the end of its negotiations." (emphasis added)).

Because Millsap will have a duty to prove coverage and allocate amounts paid to different "occurrences," the M&R cannot—like in *Urban Oaks*—end the analysis with a simple decision that there is more than one "occurrence." If the distinct "phases" delineate the multiple "occurrences," Millsap will have the burden of allocating the amounts paid between those distinct "phases." To use *Maurice Pincoffs* as an example, the wholesale bird seed distributor made eight sales to pet stores, each of which was an "occurrence." *Maurice Pincoffs*, 447 F.2d at 205. However, the sale to one pet store

---

[2] Similarly, the M&R's reliance on the Florida District Court case is also misplaced as it was also a case addressing the duty to defend. *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1302 (S.D. Fla. 2010), aff'd, 477 F. App'x 702 (11th Cir. 2012). Though, notably in contrast to both the proposed M&R and *Urban Oaks,* the court in *Basdeo* did make a specific determination as to the different "occurrences" involved.

**REPLY IN SUPPORT OF AMERISURE INSURANCE COMPANY'S
OBJECTIONS TO MEMORANDUM AND RECOMMENDATIONS**     **PAGE 4**

may have resulted in the death of more expensive birds than the sale to another store. The carrier is only responsible for paying the "occurrence limit" related to that one sale (ie. occurrence), even if it never reaches the "occurrence limit" on another sale. Each liability under the policy is still limited to the "occurrence limit" and the amounts are not aggregate.

Similarly, if the amount that Millsap allocated to pay for one waterproofing "occurrence" exceeds the "occurrence limit," U.S. Fire may still be responsible for the excess on that "occurrence." By example, the M&R suggests that the slope of the decks is a separate "occurrence" from Millsap's "other negligent weatherproofing work**.**" *See* Doc. 55 p. 11. If Millsap's liability related to the slope of the decks exceeds one million dollars, Amerisure would still only owe one million dollars for the slope of the deck even if Millsap's liability for "other negligent waterproofing work" would not exceed the one million dollar "occurrence" limit.[3]

Because Amerisure still only owes one million dollars for each "occurrence" and Millsap has the duty to allocate the amounts paid to each "occurrence," the M&R is distinguishable from *Urban Oaks* in that it needs to articulate a way to determine what, exactly, constitutes an "occurrence" and how many "occurrences" there are. As it fails to do so, the M&R should not be adopted.

---

[3] Plaintiff has filed the Settlement Agreement under seal as Exhibit K to its Motion to Dismiss (Doc. 19, Ex. K.) Amerisure specifically does not discuss any allocation in that document at this time as it would potentially violate the confidentiality agreement.

      **2.**    <u>Additionally, *Urban Oaks* was a different type of policy, with different types of work</u>

In addition to addressing the duty to defend rather than the duty to indemnify, *Urban Oaks* is distinguishable in other meaningful ways. Unlike Amerisure's general liability policy issued to a single contractor, *Urban Oaks* involved a policy issued as part of a controlled insurance program (CIP). *Compare Urban Oaks*, 2021 WL 7209213, at *1, *and* Doc. 19, Ex. A. While Millsap is the only named insured under the Amerisure policy, the word "insured" under the CIP included general contractor, the owners and the subcontractors. *Id.* Unlike *Urban Oaks*, the Amerisure policy only covers Millsap and only covers Millsap work as a waterproofing contractor. *See* Doc 19, Ex. A.

The fact that different subcontractors performed different work with different damages was a key factor in the *Urban Oaks* decision. In fact, the Plaintiffs and excess carriers in *Urban Oaks* advanced the following five occurrences: "1) improper construction of the shear walls; 2) failure to certify proper tension for tension rods; 3) improper construction of structural members; 4) improper installation of Zip Board; and **5) improper water proofing**." *Urb. Oaks Builders*, 2021 WL 7209213, at *4. Even the Plaintiffs and excess carriers in *Urban Oaks* argued that improper waterproofing was a single occurrence. *Id.* Similarly, one of the cases relied on in *Urban Oaks* specifically found that that "negligent installation of concrete flatwork, balconies, and waterproofing" was a single occurrence. *Id.* at * 6 (discussing *Liberty Mut. Fire Ins. Co. v. Bosa Dev. California II, Inc.*, No. 17-CV-0666-AJB-BGS, 2020 WL 1864645, at *8 (S.D. Cal. Apr. 13, 2020).

The court in *Urban Oaks* found that the damages alleged by the underlying plaintiffs did "not result from a single, uninterrupted, continuing cause, but from multiple types of work, by multiple subcontractors, on multiple areas of multiple buildings." *Id.* at *5. In contrast, Millsap was a single subcontractor, performing a single type of work (waterproofing) on a single Project. While there was work performed on multiple locations of a large complex (three buildings conjoined by roof and floor), that work was performed more or less continuously by the single subcontractor, Millsap. *See* Doc 19, Exs. G-1 – G-4, F-1-F-4. As such, the rational in *Urban Oaks* does not apply and the M&R should be rejected by the Court.

**B. The Claims by the Individual Unit Owners Do Not Affect the "Cause" of the Damages and, Therefore, Do Not Affect the Number of "Occurrences"**

Both the M&R and Millsap's Response again note the 81 intervenors in the Millsap suit. *See* Doc. 55, p. 10; Such a factor in finding "multiple occurrences" further highlights that the proposed findings are more focused on *effects* rather than *causes*. In *Maurice Pincoffs,* the court determined that the contaminated bird seed sold by the insured did not result in a new "occurrence" under the policy ***for every bird that died***, only for each "sale that ***created the exposure***". *Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204 (5th Cir. 1971) (emphasis added). Many bird owners were injured by the sale of the seed, but the court did not find that every injured bird owner was an occurrence. Instead, there was an "occurrence" for each sale to the pet store.

Contrary to representations in U.S. Fire's brief, Millsap entered *a single* AIA Contract with *a single* owners' association for the Project. *See* Doc. 59; Doc 19, Ex. C.

The unit owners are members of the owners' association and some unit owners were injured by the work performed subject to the AIA Contract with Millsap. *See* Doc. 22-1, Ex. 2. Their **injuries,** however, are not a *cause*. Again, it is noteworthy, that unit owners brought their action against Millsap as ***third-party beneficiaries*** to the AIA Contract. *See id.* The original AIA Contract, therefore, created Millsap's exposure to the unit owners' claims. To the extent the M&R relies on the effects of the poor workmanship to the intervenors to determine the number of "occurrences," the M&R applied the incorrect standard under Texas law and should be rejected by the Court.

### C. The Claims by the Individual Unit Owners Do Not Affect the "Cause" of the Damages and, Therefore, Do Not Affect the Number of "Occurrences"

U.S. Fire argues that, had Amerisure wished to avoid litigation on the number of "occurrences" in a construction defect case, "insurance contracts can be written to achieve the desired and bargained for result[.]" However, Amerisure *did* draft its policy to indicate that its insured's continued defective workmanship would be a single "occurrence."

Under the Amerisure Policy, "occurrence" is defined as "an accident, including continuous or ***repeated exposure to substantially the same general harmful conditions***." *See* Doc. 19-20, Amerisure Policy, Definitions, § V, ¶ 13. The Texas Supreme Court determined that defective workmanship could be an "occurrence" under the policy where the defective workmanship causes damages to other property. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). The Amerisure Policy specifically designates the type of work it is covering, "waterproofing." *See* Doc. 19-20,

Amerisure Policy, Common Policy Declarations. Therefore, reasonably, continued defective workmanship, which is an "occurrence, is continued exposure to the same generally harmful conditions.

Contrary to representations in U.S. Fire's brief, there is evidence to support that Millsap performed its work on the three buildings simultaneously and continuously. The original AIA Contract entitled the project "Building E, F & G." Doc. 19-3. None of the Applications for Payment delineate by building and are related to "Maravilla Balconies." Doc 19-8 to 19-10. The first application for payment is in June and the final is in August. *Id.* All of this undisputed evidence suggests that Millsap's defective waterproofing of the balconies, which is an "occurrence" under *Lamar,* was generally continuous. Without waiving any of Amerisure's prior arguments, even if the Court were to accept that the original window waterproofing was separate (paid for in March 2011), the work on the walkways and balconies—where the vast majority of the damages were claimed—was consistent. In April and May 2011, there were two change orders specifically for waterproofing balconies and patios. *See* Doc. 19-12 & 19-13. In June 2011, there was the first payment for "Maravilla Balconies". *See* Doc. 19-8. The next two applications for payment would be for the periods of July and August of the same year and those applications would be for the base flashing of the "Maravilla Balconies" *See* Doc. 19-9 & 19-10. A review of this evidence clearly suggests that there was not a pause in the negligent conduct [the negligent waterproofing] as required by *Evanston,* 909 F.3d at 149. As the language of the policy, Texas case law, and the evidence on file all show that

Millsap's liability arose from a single continuous "occurrence" of its defective workmanship, the Court should not adopt the M&R.

### III.  CONCLUSION AND PRAYER

Amerisure maintains that Millsap's continuous and uninterrupted waterproofing work on the Project only involved one "occurrence" under the long-standing rule set out in *Maurice Pincoffs* and the new *Evanston* rule.  However, even if this Court determines there are multiple "occurrences," the M&R's failure to articulate the number of "occurrences" should prevent its adoption.  By relying instead on "phases," it has failed to do so and the M&R should be rejected by the Court.

Respectfully submitted,

**COOPER & SCULLY, P.C.**

By: /s/ R. Brent Cooper
**R. BRENT COOPER**
**Attorney – In Charge**
Texas State Bar No. 04783250
Southern District No. 18271
Brent.Cooper@cooperscully.com
**JULIE A. SHEHANE**
Texas State Bar No. 24048794
Southern District No. 2562390
Julie.Shehane@cooperscully.com

Founders Square
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone:  (214) 712-9500
Facsimile:  (214) 712-9540

**ATTORNEYS FOR DEFENDANT**

AMERISURE INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

On the 23rd of June, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ R. Brent Cooper
**R. Brent Cooper**